Turley, J.
delivered the opinion of the court.
This is action of assumpsit, brought in the _Madison circuit court by Jacob E. Vanhook against Wm. H. Henning, to recover two hundred dollars, the price of a negro woman sold and delivered by the plaintiff to the defendant.
To this action, the defendant pleaded the general issue, non-assumpsit, upon which there was a verdict and judgment for the plaintiff and an appeal therefrom to this court.
Upon the trial, it appeared from the testimony of Matthew Whitelaw, that he, as agent of the plaintiff, sold and delivered the negro woman to the defendant some time in December 1845, at the price of two hundred dollars, which was to be paid on the 1st day in February 1846. That the plaintiff was to execute a bill of sale for her as soon astit could be done, he being at that time in the county of Henderson.
That shortly afterwards a bill of sale was executed accordingly by the plaintiff, which the witness called at the house of the defendant to deliver to him, but.did not do so because he was not at home. This bill of sale was produced by the witness on trial and is exhibited in the bill of exceptions, and it contains a covenant of warranty of soundness both of body and mind of the slave sold to the defendant.
John Henning and Francis Henning two witnesses for the defendant, proved, that by the terms of the sale the defendant was to keep the negro on trial till 1st of February 1846, and if she proved sound, plaintiff was to give him a sound bill of *680 sale for her, and he was to pay two hundred dollars. This is denied by the witness Whitelaw, who made the contract for the plaintiff; he says; “there was no condition of any sort in the trade: there was no agreement that defendant should keep the negro until the 1st of Febrvary 1846, and that if. she proved sound up to that time, plaintiff was to give a sound bill of sale for her, and defendant was to pay two hundred dollars.” In December 1846, the negro woman died and there is much proof pro and con, upon the question as to whether the disease of which she died orginated at a period anterior or posterior to the sale: but we have not deemed it necessary to discuss the merits of the controversy upon this point, because we are clear that according to the repeated adjudications of this court, there is not such a preponderancy of proof against the verdict, as will warrant us in setting it aside as being against evidence.
Upon the whole case the circuit judge charged the jury, “that if they found, that by the contract of sale the plaintiff was not to warrant the soundness of the negro, they would find for the plaintiff, unless there was fraud or suppression of the truth on the part of the plaintiff; that in investigating the question, as to whether there was a warranty or not, they were to view the bill of sale, produced on the trial, on the part of the plaintiff as persuasive only of the fact, that the plaintiff. was to warrant the soundness of the negro at the time, and not as absolute proof of the fact.” *
“That if they believed a warranty of soundness was to be given, they would enquire whether she was sound at the date of the trade in December 1845. If they found that she was, they would find for the plaintiff; if not, they would find for defendent. That if they fotmd that there was a condition in the sale, that the defendant should keep the negro till the 1st of February 1846, with a view of testing her health, that the *681 test was to be applied to the date of the trade and not to the 1st of February 1846.”
Exceptions are taken to the legality of this charge in several particulars, but we think that upon a careful examination of it, it will be found to be, though a little awkward in a few expressions, to be in the main correct, and if erroneous in any particular, as we incline to think it is, that the error is committed in favor of the defendant and against the plaintiff, and consists in permitting a defence to the action arising out of a breach of a covenant of warranty of soundness, supposed to have been contracted on the part of the plaintiff at the time of the sale. This does not in our opinion, constitute a proper case of recoupment, which it was no doubt considered to be by the circuit judge who tried this cause.
The doctrine of recoupment is only applicable to cases when there has been a special contract which has been partially executed, but not according to its terms; then the defendant is liable to the plaintiff, not upon the special contract which he has failed to execute, but upon an indebitatus assump-sit for so much as the defendant may be found ex equo et bono, to pay for the partially or defectively executed contract, and in such case in order to ascertain what the defendant does ex equo et bono really owe, he shall be allowed by way of re-coupment such damages as he has sustained by reason of the non-performance of the contract as it was entered into by the plaintiff and which he could recover by a cross action: see the cases of Porter vs. Woods, Stacker & Co., 3rd Hump., and Crouch vs. Miller, 5th Hump. 586. But this is very different from the case of an executed contract, as is the case of the sale and delivery of a negro, with a warranty of soundness, though the purchase money be not paid, and has to be sued for it. In such case, if there be a breach of the covenant, the damages arising therefrom cannot be recouped in an action *682 for the purchase money, because the purchase money is due by express contract not dependent upon the warranty, but independent of it and the damages for a breach of the covenant are also due by the express contract not dependant upon the payment of the purchase money but independent of it, and in neither case can the one be set off against the other; that is, in an action for the purchase money, the vendee cannot defend himself by saying, you warranted this property to be sound, which it was not, in consequence of which I have sustained damages; such damages are unliquidated and it would be productive- of much perplexity and delay to attempt a liquidation of them in a defence to an action of debt or indebitatus assumpsit for a specified sum of money due by express contract; neither can the vendor in an action upon the covenant of warranty defend himself by saying you owe me the purchase money for the property, and until you pay it you can have no judgment against me for a breach of the warranty. The promise to pay the money is the consideration of the warranty and it is equally good as if it had been paid unless the payment be a condition precedent. The doctrine of set-off is well understood and has no applicability whatever to such cases. Then the defence sought to be set up as arising out of the warranty was not a legal defence, and all that was said upon the subject by the judge to the jury was immaterial to the matters really at issue between the parties.
But independent of this we think there is no error in the charge: the covenant of warranty in the bill of sale could not have been considered as conclusive evidence that there was a contract of warranty at the dale of the sale, because the. defendant did not depend upon the covenant in the bill of sale, for it had never been delivered to him, was not produced or relied upon by him at the trial, and of course all that the judge could say upon the subject was that the exis *683 tence of the covenant in the bill of sale was persuasive or presumptive evidence that the plaintiff was bound by the contract to warrant soúndness of the negro.
Neither is there 'any error in that portion of the charge which says “that if the jury should find that there was a condition in the contract that the defendant was to keep the negro until the 1st of February 1846, with the view of testing her health, that the test was to be applied to the date of the trade and not to the 1st of. February 1846.”
By this the pledge obviously means that the possession of the negro till the 1st of February 1846, was intended’to give time for observation, for the purpose of ascertaining whether the negro was sound at the date of the sale in December” 1845, and not for the purpose of ascertaining whether she would be sound on the 1st February 1846, and this is certainly the correct view of such a condition, if it existed, for it cannot be conceived that the plaintiff intended to guarantee the soundness of the negro at a period of time posterior to the date of the sale.
Upon the whole view of the case, then, we find no error in the proceedings in the court below, and affirm the judgment.